UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

MICHAEL BELVIN, NERY DUQUE-GARCIA,
ALVARO GREGORY, DANIEL MACHADO,
MICHAEL MAYERS, JORGE RESTREPO,      **MEMORANDUM & ORDER**
MARCELINO REYES, ADRIANO TUBI-
GARCIA, AND MANUEL VERA,              15-cv-04924(KAM)(PK)
individually and in behalf of all
other persons similarly situated,

                    *Plaintiffs*,

          -against-

ELECTCHESTER MANAGEMENT LLC, FIRST
HOUSING COMPANY, INC., FOURTH
HOUSING COMPANY, INC., SECOND
HOUSING COMPANY, INC., THIRD
HOUSING COMPANY, INC., AND GERALD
FINKEL, jointly and severally,

                    *Defendants*.

----------------------------------X

**MATSUMOTO, United States District Court Judge**

          Plaintiffs, represented by counsel at the time, commenced

this case on August 21, 2015.  (ECF No. 1.)  Plaintiffs' Second

Amended Complaint alleges defendants, who are in the business of

residential real estate, violated the Fair Labor Standards Act, 29

U.S.C. §§ 206, 215(a)(2), the New York Minimum Wage Act, N.Y. Lab.

Law §§ 198(1-a), 663(1), and the New York Wage Theft Prevention Act,

N.Y. Lab. Law § 195(3).  (ECF No. 76, Second Amended Complaint

("SAC").)  Currently before the court is defendants' motion for

summary judgment against a subset of plaintiffs who are now

1

proceeding *pro se*.  Defendants filed their answer on March 6, 2017, and on March 29, 2019, moved for summary judgment.  The *pro se* plaintiffs oppose defendants' motion.  The Court has considered the parties' submissions  in support of, and in opposition to defendants' motion.  (ECF Nos. 155-163, 188.)  For the reasons set forth herein, the court grants defendants' motion for summary judgment and dismisses all claims asserted by plaintiffs Michael Belvin, Nery Duque-Garcia, Alvaro Gregory, Michael Mayers, Jorge Restrepo, and Marcelino Reyes from this action.[1]

## I.    THE PARTIES AND ALLEGATIONS

Defendant Electchester Management LLC ("Electchester Management"), manages defendants First Housing Company, Inc. ("First Housing"), Second Housing Company, Inc. ("Second Housing"), Third Housing Company, Inc. ("Third Housing"), and Fourth Housing Company, Inc. ("Fourth Housing"), along with non-party Fifth Housing Company, Inc. ("Fifth Housing," and collectively, "Electchester").  (ECF No. 155-6, Declaration of Vito V. Mundo in Support of Motion for Summary Judgment ("Mundo Decl.") ¶ 1.)  Electchester is a limited dividend non-housing cooperative consisting of 38 buildings in five multi-building complexes located in Flushing, Queens.  (*Id.* ¶ 4.)  Defendant Gerald Finkel is the principal of defendants' business, which is residential real estate.  (SAC ¶¶ 29-30.)  Plaintiffs

---

[1]     Defendants did not move for summary judgment with respect to claims asserted by plaintiffs Adriano Tubi-Garcia, Daniel Machado, or Manuel Vera.

Michael Belvin, Nery Duque-Garcia, Alvaro Gregory, Michael Mayers, Jorge Restrepo, and Marcelino Reyes (collectively, "porter plaintiffs"), are either former or current employees of Electchester.  (SAC ¶¶ 1, 22, 35, 36, 38, 39, 42, 43, 46, 47, 50, 51, 54, 55, 58, 59.)

Plaintiffs claim that defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), including New York's Minimum Wage Act and the New York Wage Theft Prevention Act ("WTPA"). (*Id.* ¶¶ 1-3, 24.)  The SAC alleges that defendants willfully failed to pay plaintiffs the applicable minimum wage, and that plaintiffs worked over forty hours each workweek without appropriate overtime compensation.  (*Id.* ¶¶ 71-72.)  Count One of the SAC asserts a claim under the FLSA for defendants' alleged failure to pay the plaintiffs the applicable minimum wage under 29 U.S.C. § 206, by failing to pay plaintiffs at a rate less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek in violation of 29 U.S.C. §§ 207 and 215(a)(2).  (*Id.* ¶¶ 77-89.)  Count Two, which asserts violations of New York's Minimum Wage Act and the WTPA, is largely premised upon the same conduct.  (*Id.* ¶¶ 90-99.)  Count Three alleges defendants violated the NYLL by paying plaintiffs later than the regular pay day during many workweeks.  (*Id.* ¶¶ 100-03.)  Count Four asserts that defendants violated the WTPA by failing to furnish with each wage payment a wage statement that included information

required by the NYLL.  (*Id.* ¶¶ 104-07.)  Finally, Count Five of the SAC seeks declaratory relief based on the conduct alleged in the SAC.  (*Id.* ¶ 108-13.)

## II.    STATEMENT OF FACTS

### A.    Porter Plaintiffs' Workweek

Based on the record before the court, the following facts are not disputed unless otherwise noted.  Pursuant to a Collective Bargaining Agreement between the Realty Advisory Board on Labor Relations Inc. and Service Employees International Union, Local 32BJ ("CBA"), Electchester Management employs approximately 34 porters to service the buildings in each complex.  (ECF No. 155-7, Defendants' Statement of Material Facts Pursuant to Rule 56.1 ("SOF") ¶ 4; *see* Mundo Decl. ¶ 7.)[2]

Defendants' workweek and corresponding pay period for porters runs from Saturday to Friday.  (SOF ¶ 5.)  The porters' scheduled payday is every Friday.  (*Id.*)  Defendants have operated with the same workweek and payday since January 1, 2009.  (*See* ECF No. 161, Reply Declaration of Vito Mundo ("Mundo Reply Decl.") ¶ 5.) According to Vito Mundo, Esq., Electchester's General Counsel, porters are paid weekly by direct deposit or by check, depending on each porter's personal preference.  (Mundo Decl. ¶ 9.)  The means of payment elected by each porter remains in force until the porter

---

[2]    The CBA is attached as Exhibit C to the Mundo Declaration.  (*See* ECF No. 155-3, pp. 34-109.)

4

elects to change it. (*Id.*) Plaintiffs Nery Duque-Garcia; Alvaro Gregory, and Michael Mayers elected to be paid by direct deposit; Michael Belvin, Jorge Restrepo, and Marcelino Reyes elected to be paid by check. (*Id.* ¶ 10.)

### B. Porter Plaintiffs' Pay Schedule

Electchester pays its porters between $18 and $23.05 per hour pursuant to the CBA. (SOF ¶ 8; Mundo Decl. ¶ 11.) The porters' regular work schedule is Monday through Friday, from 7 a.m. to 4 p.m., with a one hour unpaid meal break from 12 p.m. to 1 p.m., or 1 p.m. to 2 p.m. ("Standard Week"). (SOF ¶ 9; Mundo Decl. ¶ 12.) Approximately every eleven weeks, on a rotating basis, Electchester schedules all porters to work both weekend days, with the following Mondays and Tuesdays off. (SOF ¶ 9; Mundo Decl. ¶ 12.) The weeks when the porters are scheduled to work both weekend days are referred to as "on call" periods. (SOF ¶ 10; Mundo Decl. ¶ 12.)

During the Standard Week, a porter reports to work Monday, Tuesday, Wednesday, Thursday and Friday, for eight hours per day—a total of forty hours of work during the corresponding pay period. (SOF ¶ 10; Mundo Decl. ¶ 13.) According to defendants, when porters are "on call" and scheduled for weekend work, the porter will be given off from work the following Monday and Tuesday, reporting back to work Wednesday, Thursday, and Friday. (Mundo Decl. ¶ 13.) This arrangement results in a forty-hour workweek, as does the Standard Week, because the pay period begins on Saturday and ends on Friday.

(*Id.*)  The Mundo Declaration provides the following demonstrative for clarity:

| Workweek | Sat | Sun | Mon | Tues | Wed | Thurs | Fri | **Total** |
|---|---|---|---|---|---|---|---|---|
| Hours worked (Standard Week) | 0 | 0 | 8 | 8 | 8 | 8 | 8 | **40** |
| Hours worked (On call week) | 0 | 0 | 8 | 8 | 8 | 8 | 8 | **40** |
| | 8 | 8 | 0 | 0 | 8 | 8 | 8 | **40** |

(Mundo Decl. ¶ 14; SOF ¶ 12.)

Notably, this suit is not the first time Electchester's workweek arrangement has been the subject of complaints.  In 2016, certain porters filed complaints with their union, Service Employees International Union, Local 32BJ ("32BJ"), seeking overtime pay based on the same claims asserted here.  (SOF ¶ 13; Mundo Decl. ¶ 15.)  In January 2017, 32BJ withdrew the porters' complaints with prejudice. (SOF ¶ 14.)  In a Memorandum of Agreement ("MOA"), 32BJ acknowledged that "because [Electchester's] workweek and corresponding pay period runs from Saturday to Friday, neither of the employee's two work weeks include more than five scheduled work days of 40 hours and therefore no premium overtime wage rate is paid to the employee for the hours worked," and agreed that Electchester "shall continue its long-standing practice of assigning employees to perform weekend work on a rotating periodic basis without paying overtime premium pay when the

affected employee is not performing more than five days of work in each payroll week."  (ECF 155-5, Mundo Decl. at Ex. AA, pp. 102-04.)

###    C.    Defendants' Other Pay Practices

Electchester states that it pays overtime at the rate of time and a half to all porters for all hours worked over forty hours during each workweek.  (Mundo Decl. ¶ 17.)  Electchester maintained payroll registers for all six of the porter plaintiffs.  (Mundo Decl. ¶ 18.)[3]  Electchester also uses Automatic Data Processing, Inc. ("ADP") as its payroll vendor.  (Mundo Decl. ¶ 19; SOF ¶ 16.)  An exemplar earnings statement provided by the defendants lists the dates

---

[3]    Michael Belvin's payroll registers from January 7, 2011 through December 30, 2016, are attached as Exhibit D to the Mundo Declaration.  (*See* ECF No. 155-4, pp. 1-306.)  Nery Duque-Garcia's payroll registers from January 7, 2011 through October 30, 2015, are attached as Exhibit E to the Mundo Declaration.  (*See* ECF No. 155-4, pp. 307-459.)  Alvaro Gregory's payroll registers from January 7, 2011 through December 30, 2016, are attached as Exhibit F to the Mundo Declaration.  (*See* ECF No. 155-4, pp. 460-767.)  Michael Mayers's payroll registers from January 7, 2011 through December 30, 2016, are attached as Exhibit G to the Mundo Declaration.  (*See* ECF No. 188.)  Jorge Restrepo's payroll registers from January 7, 2011 through December 23, 2011, are attached as Exhibit H to the Mundo Declaration.  (*See* ECF No. 188-1.)  Marcelino Reyes's payroll registers from January 7, 2011 through December 30, 2011, are attached as Exhibit I to the Mundo Declaration.  (*See* ECF No. 188-2.)

Defendants belatedly filed the payroll information for Mayers, Restrepo, and Reyes on January 23, 2020, (*see* ECF No. 188), after neglecting to include these documents in their original submission.  Though defendants inadvertently failed to serve these documents before Mayers, Restrepo, and Reyes filed their opposition papers, the court finds that defendants tardy filing was not prejudicial to these *pro se* plaintiffs.  Based on the *pro se* plaintiffs' bare-bones opposition papers, including their near-wholesale failure to proffer or refute evidence, despite this court's explanations at the October 25, 2018 conference, as well as defendants' service of a Local Civil Rule 56.2 Notice, the court finds timely service of these records would not have significantly impacted the porter plaintiffs' submissions or arguments therein.  Moreover, the records for Belvin, Duque-Garcia, and Gregory *were* timely submitted, and plaintiffs have not highlighted any deficiencies or inaccuracies with those records.  Finally, defendants' counsel's timely-filed declaration refers to exhibits that purport to be the payroll records for Mayers, Restrepo, and Reyes. (*See* ECF No. 155-1, Declaration of Paul F. Millus ("Millus Decl.") ¶¶ 9-11.)  However, there is no indication that the porter plaintiffs inquired about the tardily-filed and served records.  This bolsters the inference that the porter plaintiffs would not have relied on these records had they been timely filed in the first place.

of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. (ECF No. 155-5, Mundo Decl. at Ex. J, pp. 1-2; SOF ¶ 16.) However, defendants represent that ADP does not provide copies of the earnings statements for each employee to the employer, and thus, according to defendants, the porter plaintiffs' earning statements are not in Electchester's possession, custody or control. (Mundo Decl. ¶ 19.)

## III. THE MOTION

Defendants move for summary judgment to dismiss the SAC as to the porter plaintiffs. Defendants move on the grounds of purportedly uncontroverted evidence and inherent legal deficiencies in the SAC. According to defendants, the porter plaintiffs' claim that Electchester failed to pay them a minimum wage under federal and New York law fails because the SAC itself alleges the porter plaintiffs were paid hourly wages exceeding the federal and New York minimum wage. (ECF No. 155-8, Defendants' Memorandum of Law ("Defs.' Mot.") 1.) Defendants further argue that the porter plaintiffs' overtime claims fail because they are erroneously based on hours worked during

a calendar week, rather than a "workweek" as defined under FLSA.

(*Id.*)  The defendants' motion further argues that summary judgment is appropriate on the porter plaintiffs' claim that defendants failed to timely pay their wages.  (*Id.* 1-2.)  Finally, defendants assert that they are not liable under the WTPA, NYLL § 195(3), because Electchester furnished appropriate statements with the porter plaintiffs' weekly wage payments, and even if they did not, Electchester's indisputably paid all wages timely and completely, which is an affirmative defense to the porter plaintiffs' claims. (*Id.* 2.)

In response, the *pro se* porter plaintiffs submitted brief affidavits or letters opposing defendants' motion.[4]  The plaintiffs' arguments present as follows:

**Belvin**: Mr. Belvin urges the court to deny the motion because: (1) "granting of a summary judgment motion is a drastic action," and plaintiffs should be allowed a "full a complete

---

[4]    Though the porter plaintiffs were initially represented by the Law Office of Justin A. Zeller, P.C. which prepared the SAC, their attorney, Brandon Sherr, Esq., was granted leave to withdraw as counsel for all porter plaintiffs except Alvaro Gregory on May 3, 2018.  (ECF No. 108)  On April 19, 2019, Magistrate Judge Kuo granted Sherr's motion to withdraw as Mr. Gregory's counsel.  (Order dated Apr. 19, 2019.)  Mssrs. Belvin, Reyes, Restrepo, and Gregory all appeared at an in-court pre-motion conference on October 25, 2018.  The minute entry for the conference reflects that "[t]he court explained the process for summary judgment motion practice to the appearing *pro se* plaintiffs and the requirements of Local Rule 56.1, as well as the requirement to come forward with admissible evidence, such as affidavits, pay stubs, sign-in sheets, and/or time sheets, that establish the existence of a genuine dispute of material fact, meaning a fact that would affect the outcome of the litigation," and that "the *pro se* plaintiffs may consider seeking the assistance of the District Court's *pro se* attorney or a non-profit legal services organization." (Minute entry dated Oct. 25, 2018.)  Defendants served the porter plaintiffs with an appropriate notice pursuant to Local Civil Rule 56.2 on December 19, 2018, (ECF No. 155-1), well before the porter plaintiffs' served their opposition papers.

opportunity, via a trial, to present their case;" (2) "[n]one of the cases cited by Defendants support the motion for summary judgment;" (3) "[m]uch of the evidence submitted by Defendants is irrelevant and not supportive of their denial of the claims made in the Complaint;" (4) defendants "have forced the Plaintiffs to work seven (7) straight days, several times a year, for several years, without proper compensation and/or adequate time off;" and (5) defendants have not met their legal burden. (ECF No. 156, Affidavit in Opposition of Michael Belvin ("Belvin Aff.").) Belvin's affidavit is comprised of short, conclusory assertions, without legal argument, or citation to case law or evidence.

**Gregory**: Mr. Gregory asserts that he worked at Electchester for 13 years and "every 5 weeks I had to work 7 days straight with 2 days off[.] Thats [*sic*] a total of 56 hours in a working week[.]" (ECF No. 157, Affidavit in Opposition of Alvaro Gregory ("Gregory Aff.").) Beginning in 2014, Mr. Gregory claims he worked "7 days straight every 8 weeks with 2 days off," again, for a total of 56 hours in a workweek. (*Id.*) Mr. Gregory notes that New York law requires pay at the rate of one-and-a-half times the regular pay rate for all hours worked in excess of 40 hours, and notes "our pay roll was changed few times for the matter," but does not otherwise state whether or not defendants underpaid him, much less when, how often, or by what amount. (*Id.*) Mr. Gregory's submission also attaches a December 16, 2008 letter from Electchester Management to its employees

10

regarding a change in the payroll schedule ("December 16 Letter").
(*Id.* 2.)  The December 16 Letter explains that defendants are changing
the payroll schedule from Thursday to Wednesday, to Saturday through
Friday, effective January 1, 2009.  (*Id.* 10.)

**Mayers**: Mr. Mayers's submission is a handwritten note
regarding the FLSA and NYLL, and states that "employees may not be
required to work 7 days in a row unless an exception applies," and
that an employer "may change when their work week starts by the change
cannot be made to avoid paying over time."  (ECF No. 158, Affidavit in
Opposition of Michael Mayers ("Mayers Aff.") 1.)  Mr. Mayers also
states he "work[s] every six weeks."  (*Id.* 1.)  The next ten pages of
Mr. Mayers's submission include a two-page article from
https://www.replicon.com/overtime-pay-and-wage-theft-the-good-the-bad-
and-the-ugly/ on overtime pay and wage theft; several phone images
that display information about FLSA and NYLL requirements; and the
December 16 Letter from Electchester Management regarding the change
in the payroll schedule.  (*Id.* 3-11.)

**Restrepo**: Mr. Restrepo submitted a one-page handwritten
letter, which, like Mr. Mayers's affidavit, states that he worked at
Electchester for 19 years and "every 5 weeks I had to work 7 days
straight with 2 days off.  That's a total of 56 hours in a work week."
(ECF No. 159, Affidavit in Opposition of Jorge Restrepo ("Restrepo
Aff.").)  Mr. Restrepo also attaches the December 16 Letter to his
affidavit.  (*Id.*)

**Reyes**: Mr. Reyes's letter states that he started working for Electchester Management as a porter in 1992.  Mr. Reyes claims that, at the time, plaintiffs' typical workweek started on a Thursday and plaintiffs received their pay on a Wednesday.  (ECF No. 160, Affidavit in Opposition of Marcelino Reyes ("Reyes Aff.") 1.)  According to Reyes, "we were on a rotating schedule of which each one of us had to work a weekend, every five (5) weeks, we had off Tuesday and Thursday.  After a few years they changed the starting work day to Saturday and the payday to Friday, at this time, when we had to work on the weekend, our off days were changed to Monday and Tuesday, we worked seven days straight, 56 hours in total."  Reyes concludes that "the defendant's attorney statements are incorrect when he states that, '*Electchester has operated with the same workweek and payday for over 20 years*" and that "*all porters work both weekend days once every 11 weeks.*"  (*Id.* (emphasis in original).)[5]

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), "and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law."  *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *see also*

---

[5]    Electchester's General Counsel, Vito Mundo, Esq., concedes that he erroneously stated that Electchester maintained the same payroll schedule for over 20 years, but notes that any claim arising from the January 1, 2009 change to defendants' payroll schedule is time-barred.  (ECF No. 161, Reply Declaration of Vito Mundo ("Mundo Reply Decl.") ¶ 5.)  The court agrees.  *See* 29 U.S.C. § 255; N.Y. Lab. Law § 198(3).

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "All ambiguities must be resolved in favor of the non-moving party and all permissible inferences from the factual record must be drawn in that party's favor." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

If the moving party can show that "there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Peterson v. Regina*, 935 F. Supp. 2d 628, 634 (S.D.N.Y. 2013) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

To defeat a motion for summary judgment, the non-moving party must identify probative, admissible evidence from which a reasonable factfinder could find in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-257 (1986). It "requires the nonmoving party to go beyond the pleadings and by [his or] her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." 477 U.S. at 261 n.2 (citations omitted). "Only disputes

13

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . . . [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." 477 U.S. at 248. If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (citations omitted).

## DISCUSSION

### I. Minimum Wage Claims Under FLSA and NYLL

The SAC seeks to prosecute claims accruing six years prior to the date of commencement of the case, *i.e.* August 21, 2009. (SAC ¶ 24.)[6] During the relevant time period, the minimum wage under the FLSA has been $7.25 per hour. 29 U.S.C. § 206(1)(C). Under the NYLL, the minimum wage was $7.15 from January 1, 2007 through December 30, 2013, $8.00 from December 31, 2013 through December 30, 2014, $8.75 from December 31, 2014 through December 30, 2015, and $9.00 from December 31, 2015 through December 30, 2016. N.Y. Lab. Law § 652.

---

[6]     The statute of limitations for FLSA violations is three years in the case of a willful violation, 29 U.S.C. § 255, and six years under the NYLL. N.Y. Lab. Law § 198(3). The porter plaintiffs' minimum wage claims thus run from August 21, 2012, through August 21, 2015 (the date plaintiffs commenced suit) under the FLSA, and August 21, 2009 through August 21, 2015 under the NYLL.

The complaint unequivocally alleges that the porter plaintiffs earned hourly wages well in excess of the FLSA minimum wage. (Compl. ¶¶ 37 (Belvin: "approximately $22.50 per hour"); 41 (Duque-Garcia: "approximately between $18.50 and $20.00 per hour"); 45 (Gregory: "approximately between $18.30 and $23.05 per hour"); 53 (Mayers: "approximately between $19.00 and $22.50 per hour"); 57 (Restrepo: "approximately between $19.50 and $20.21 per hour"); 61 (Reyes: "approximately $20.21 per hour").) Further, the CBA indicates that the regular hourly rate for porters from April 21, 2014 through April 20, 2016 ranged between $21 and $23 per hour. (CBA 135-37.) Electchester's payroll registers further corroborate that each porter plaintiff received wages far in excess of the FLSA minimum wage. (Mundo Decl. at Exs. D to I.) The porter plaintiffs' opposition affidavits do not proffer evidence to the contrary, or credibly claim that Electchester's payroll documents are inaccurate or misrepresentative.

Accordingly, there is no genuine dispute of material fact that the porter plaintiffs' wages exceeded the federal and New York minimum wage.

## II. Overtime Claims Under FLSA and NYLL

Section 207(a)(1) of the FLSA provides that:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for

15

> a workweek longer than forty hours unless such employee
> receives compensation for his employment in excess of the
> hours above specified at a rate not less than one and one-
> half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The "regular rate" of pay is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. § 778.108. "The 'regular rate' under the Act is a rate per hour," unless an employee's earnings are determined on another basis. *Id.* § 778.109. "If the employee is employed solely on the basis of a single hourly rate, the hourly rate is the 'regular rate.' For overtime hours of work the employee must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week." *Id.* § 778.110(a). The NYLL likewise provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of [the FLSA] . . . ." 12 N.Y.C.R.R. § 142-2.2.

To establish liability under the FLSA and NYLL on a claim for unpaid overtime, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011); *see also Tapia v. Blch 3rd Ave. LLC*, No. 14 Civ. 8529, 2016 WL 4581341, at *4 (S.D.N.Y. Sept. 1, 2016) (observing that under the FLSA and the NYLL, "[p]laintiffs bear the burden of proof to establish all claims and damages by a

preponderance of the evidence"). The FLSA and NYLL require employers to pay overtime to employees who work in excess of forty hours per workweek. See 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2; *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 78 (2d Cir. 2003) (claim under 29 U.S.C. § 207 is analogous to a claim under 12 N.Y.C.R.R. § 142-2.2). A "workweek" is defined by the Code of Federal Regulations as follows: "An employee's workweek is a fixed and regularly recurring period of 168 hours—seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day." 29 C.F.R. § 778.105. "A standard and repeating Monday to Friday 40-hour week is not required." *Lopez v. Hollisco Owners' Corp.*, 147 F. Supp. 3d 71, 77 (E.D.N.Y. 2015), *aff'd*, 669 F. App'x 590 (2d Cir. 2016) (citing *Abshire v. Redland Energy Servs.*, 695 F.3d 792 (8th Cir. 2012)).

"[N]umerous federal and state courts have concluded that an employer does not violate the FLSA merely because, under a consistently-designated workweek, its employees earn fewer hours of overtime than they would if the workweek was more favorably aligned with their work schedules." *Lopez*, 147 F. Supp. 3d at 77 (quoting *Abshire*, 695 F.3d at 794). "[T]he FLSA, standing alone, *does not require that the workweek begin on any given day of the week*. The Act only requires that the starting day remain constant and that the employees not work more than 40 hours within the 168 hour week without

17

receiving overtime compensation." *Id.* at 77-78 (citations omitted, brackets and emphasis in original).

In *Lopez*, the plaintiff made similar claims to the *pro se* plaintiffs here, under the FLSA and NYLL against the defendant-employer, for failure to pay overtime based on instances when the plaintiff worked seven days in a row. *Id.* at 79. Judge Weinstein explained that plaintiff's claim was based on a "misunderstanding of what his 'workweek' was for purposes of federal and state labor laws." *Id.* Judge Weinstein granted summary judgment for defendant because the instances when plaintiff worked seven consecutive days spanned two workweeks, and therefore, plaintiff was not entitled to additional overtime compensation under the FLSA and NYLL. *Id.*

Here, the porter plaintiffs' overtime claims under the FLSA and NYLL are based on the same fundamental misunderstanding of a workweek as the *Lopez* plaintiff. It is undisputed that the porter plaintiffs' Standard Week during the relevant time period ran from Saturday through Friday. (Mundo Decl. ¶ 12.)[7] Mr. Mundo explained in his declaration that, even though the porter plaintiffs were occasionally scheduled for work on seven consecutive days, the seven days were always allotted over two separate workweeks, such that the

_____

[7]     Plaintiffs Gregory, Mayers, Restrepo, and Reyes, each note or otherwise indicate that Electchester changed the porter plaintiffs' scheduled workweek beginning on January 1, 2009. (*See* Gregory, Mayers, Restrepo, and Reyes Affs.) This fact is immaterial however, as explained above, because any FLSA or NYLL claims arising from the 2009 change in the porter plaintiffs' workweek schedule would be time-barred. *See* 29 U.S.C. § 255, N.Y. Lab. Law § 198(3).

porter plaintiffs were never scheduled for more than 40 hours at a regular rate in a given workweek.  (Mundo Decl. ¶¶ 13-14.)  Though the porter plaintiffs were typically scheduled to work 8 hours per day, Monday through Friday, on occasions when a porter plaintiff additionally worked the Saturday and Sunday that followed, resulting in seven consecutive work days, the porter plaintiff would receive the following Monday and Tuesday off, resulting in no more than 40 scheduled hours of work in a workweek.  The voluminous payroll records for the porter plaintiffs specify that each workweek ended on a Friday, and that each porter plaintiff worked no more than 40 hours at a regular rate.  (*See* Mundo Decl. at Exs. D to I.)

Based on the unchallenged testimony of Mr. Mundo, corroborated by Electchester's payroll registers, and the porter plaintiffs' failure to proffer evidence supporting their overtime claims, the court finds there is no dispute of material fact that the porter plaintiffs were not uncompensated or undercompensated for overtime in violation of the FLSA or NYLL.

### III.  Failure to Timely Pay Wages

Section 191(d) of the NYLL provides that "[a] clerical and other worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer."  N.Y. Lab. Law § 191(d).  It is undisputed that the porter plaintiffs' payday was every Friday.  (*See* Mundo Decl. ¶ 8; *see also id.* at Exs. D to I.)

The "Pay Date" on each Electchester pay statement for the porter plaintiffs' invariably matches "Period Ending" date. (*See generally id.*)  The porter plaintiffs claim that defendants failed to pay the porter plaintiffs' wages "not later than the regular pay day for the pay period during many workweeks," (SAC ¶ 101), but neglect to specify any instances of tardy payment.  Neither do the porter plaintiffs' opposition affidavits.  Mr. Mundo attested that all wage payments were timely made every Friday, and this assertion is supported by the Electchester's payroll registers, and undisputed by any evidence. (Mundo Decl. ¶ 18; *id.* at Exs. D to I.)  This uncontroverted evidence of timely payment warrants summary judgment in favor of defendants and dismissal of the porter plaintiffs' claim for failure to timely pay wages.

## IV.   Wage Theft Prevention Act

Plaintiffs seek to recover damages for defendants' alleged failure to provide regular wage statements and annual wage notices as required by New York's WTPA.  (SAC ¶ 105 (citing N.Y. Lab. Law § 195(3) and 12 N.Y.C.C.R.R. § 141-2.2).)  The WTPA requires employers to furnish each employee with a statement with every payment of wages, listing the following:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages . . . . [T]he statement shall include the regular hourly rate

> or rates of pay; the overtime rate or rates of pay; the
> number of regular hours worked, and the number of overtime
> hours worked.

N.Y. Lab. Law § 195(3). New York's Labor Law, however, provides an

affirmative defense for violations of section 195(3) for employers who

made complete and timely payment of wages. *Id.* § 198(1-d); *see Jindan*

*Wu v. Nat. Tofu Rest. Corp.*, No. 16-CV-3613-ARR-ST, 2018 WL 1009274,

at *8 (E.D.N.Y. Feb. 20, 2018) (acknowledging that complete and timely

payment of wages establishes affirmative defense to a violation of §

195(3)); *see also Guan Ming Lin v. Benihana New York Corp.*, No. 10

CIV. 1335 RA JCF, 2012 WL 7620734, at *13 (S.D.N.Y. Oct. 23,

2012), *report and recommendation adopted*, No. 10 CIV. 1335 RA JCF,

2013 WL 829098 (S.D.N.Y. Feb. 27, 2013) ("The statutory language [of

N.Y. Lab. Law §§ 195(3) and 198(1-d)] clearly and unambiguously

explains what the wage statements must contain, what reliefs the

employees may seek for receiving inadequate wage statements, and

what affirmative defenses the employer may raise.").[8]

---

[8]     Section 198(1-d) of the Labor Law provides, in relevant part:

> In any action or administrative proceeding to recover damages for violation of
> subdivision three of section one hundred ninety-five of this article, it shall
> be an affirmative defense that (i) the employer made complete and timely
> payment of all wages due pursuant to this article or articles nineteen or
> nineteen-A of this chapter to the employee who was not provided statements as
> required by subdivision three of section one hundred ninety-five of this
> article or (ii) the employer reasonably believed in good faith that it was not
> required to provide the employee with statements pursuant to paragraph (e) of
> subdivision one of section one hundred ninety-five of this article.

N.Y. Lab. Law § 198(1-d). Though the relevant affirmative defense was enacted
pursuant to a 2011 amendment, *see generally* 2010 S.B. 8380, Ch. 564, "the
legislative history of the amendments to the § 198 Affirmative Defense demonstrates
that they are remedial and that that the legislature intended them to have
retroactive effect." *Hicks v. T.L. Cannon Mgmt. Corp.*, No. 13-CV-06455 EAW, 2018 WL
2440732, at *7 (W.D.N.Y. Mar. 13, 2018).

As evidence of their compliance with section 195(3), defendants submitted an exemplar wage statement, which defendants assert was provided to each employee, including the porter plaintiffs. (ECF No. 155-5, Mundo Decl. at Ex. J.) Though the exemplar statement is facially compliant with section 195(3), Mr. Mundo represents that defendants do not possess specific statements for each porter plaintiff during the relevant time period because Electchester's payroll vendor, ADP, does not provide Electchester with copies of each employee's statements. (Mundo Decl. ¶ 19.) The porter plaintiffs do not credibly contest defendants' assertion of compliance, much less submit or refer to evidence to the contrary. Further, as established above, defendants have submitted clear and unrebutted evidence of complete and timely wage payments for each porter plaintiff, and thus, can avail themselves of the affirmative defense set forth in section 198(1-d) of the Labor Law.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment is granted. The court dismisses with prejudice Counts One through Four of the Second Amended Complaint asserted by plaintiffs Michael Belvin, Nery Duque-Garcia, Alvaro Gregory, Michael Mayers, Jorge Restrepo, and Marcelino Reyes. The court also dismisses Count Five of the Second Amended Complaint as it relates to the *pro se* porter plaintiffs, which seeks relief that is duplicative of, and reliant on, Counts One through Four. Defendants shall promptly serve

the *pro se* porter plaintiffs with a copy of this Memorandum and Order and note service on the docket. The Clerk of Court is respectfully directed to enter partial judgment in favor of defendants, but not to close the case, and dismiss plaintiffs Michael Belvin, Nery Duque-Garcia, Alvaro Gregory, Michael Mayers, Jorge Restrepo, and Marcelino Reyes from this case.

**SO ORDERED.**

Dated:   January 30, 2020
          Brooklyn, New York

                                     /s/
                              Kiyo A. Matsumoto
                              United States District Judge